UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.  10-61150-CIV-COHN/SELTZER

SUCCES SYLVESTRE,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed,

respectively, by Plaintiff Succes Sylvestre ("Claimant") and by Defendant Michael J. Astrue,

Commissioner of Social Security ("Commissioner").  The motions were referred to United

States Magistrate Judge Barry S. Seltzer pursuant to Magistrate Rule 1(c) and (d), Local

Rules of the United States District Court for the Southern District of Florida.

The cross-motions present the following issue: whether there exists substantial

evidence to support the Administrative Law Judge's ("ALJ's") determination that Claimant

is "not disabled."  The undersigned concludes that substantial evidence does support the

ALJ's determination and, accordingly, respectfully RECOMMENDS that Plaintiff's Motion

---

[1] Although other circuits have found the summary judgment device inappropriate for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d 1383, 1389 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court has reviewed the record and based its judgment on a finding of substantial evidence in the administrative record.  See Lovett v. Schweiker, 667 F.2d 1, 2-3 (5th Cir. 1981).

for Summary Judgment (DE 13) be DENIED, that Defendant's Motion to Summary Judgment (DE 16) and Defendant's Supplement to Defendant's Motion for Summary Judgment (DE 18) be GRANTED, and that the Commissioner's decision be AFFIRMED.

## II.     PROCEDURAL HISTORY

On February 3, 2006, Claimant filed for a period of disability and disability insurance benefits ("DIB"), alleging that he became unable to work on August 11, 2005. Tr. 55-59. In his Disability Report, he attributed his alleged inability to work to "[p]ain in left shoulder, neck, left arm, low back, [and] headaches." Tr. 63. The Social Security Administration denied his application initially on May 12, 2006, and upon reconsideration on October 24, 2006. Tr. 45-47, 49-52. Thereafter, Claimant was granted an administrative hearing, which was held on August 1, 2007. Tr. 809-33. On February 20, 2008, the ALJ rendered his decision, finding that Claimant was not under a "disability," as defined in the Social Security Act, from August 11, 2005, through the date of the decision. Tr. 10-21. On May 20, 2010, after reviewing additional evidence, the Appeals Council of the Social Security Administration denied Claimant's request for review, which left the ALJ's decision standing as the final decision of the Commissioner. Tr. 5-7.

On July 6, 2010, Claimant filed a Complaint (DE 1) in this Court. On October 19, 2010, the Commissioner filed an Answer (DE 8), together with the administrative record (DE 9). On December 16, 2010, Claimant filed Plaintiff's Motion for Summary Judgment and Memorandum in Support Thereof (DE 13). On January 14, 2011, the Commissioner filed Defendant's Motion for Summary Judgment with Supporting Memorandum of Law (DE 16), and on January 20, 2011, he filed Defendant's Supplement to Defendant's Motion for Summary Judgment (DE 18). The matter is now ripe for decision.

2

III.    FACTS

The undersigned has reviewed the Statement of Facts contained within Defendant's

Supplement to Defendant's Motion for Summary Judgment (DE 18) and finds that it fairly

and accurately summarizes the relevant portions of the administrative record.[2]

## Background

Plaintiff stopped working in August 2005 because he could not find any light duty work (Tr. 64). Plaintiff applied for and received unemployment benefits for six months (Tr. [818]). He filed a workers compensation claim, but did not receive a settlement (Tr. 817-18).

## Medical Evidence

### Medical Evidence Prior to August 11, 2005, Plaintiff's Alleged Onset Date of Disability

Plaintiff has a history of neck pain and shoulder pain following a work-related injury in 1998, and left shoulder arthroscopy in November 1998 by orthopedic specialist Robert Baylis, M.D. (Tr. 196-207, 490, 518). Dr. Baylis gave Plaintiff permanent light duty restrictions that included no lifting of more than twenty-five pounds overhead (Tr. 515).[3] Plaintiff continued to work (Tr. 54).

In 2002 and 2003, Plaintiff came under the care of orthopedic specialist Kevin B. Shrock, M.D., and pain management specialist Lance Lehmann, M.D., for shoulder and neck pain (Tr. 394-403, 637-56). A cervical MRI showed a left-sided disk herniation that appeared to be contributing to Plaintiff's symptoms (Tr. 783). An MRI scan of the left shoulder showed tendinosis in the supraspinatous tendon, and some mild

---

[2] The undersigned has bracketed minor corrections to the Statement of Facts.

[3] Independent medical examiner Dr. Richard Rozencwaig, M.D., an orthopedist, stated that Plaintiff could perform light duty work with no repetitive overhead activities, no pushing, pulling, or lifting greater than twenty pounds, and avoidance of commercial driving (Tr. [16,] 520). According to Dr. Rozencwaig, Plaintiff sustained a ten percent impairment to the whole person (Tr. [16,] 520).

degenerative changes (Tr. 783). Plaintiff received treatment consisting of cervical epidural injections, medication, and a TENS unit (Tr. 558-65, 637-39, 721-65, 783-84, 791-96, 803). Plaintiff continued to work (Tr. 54).

Following a shoulder decompression with lysis of adhesions by Dr. Shrock in September 2004, Plaintiff had improvement of his symptoms (Tr. 643-48). By his final workman's compensation evaluation in March 2005, Plaintiff had excellent range of motion (Tr. 649). He had symmetric rotator cuff strength, albeit with some wincing (Tr. 649). Impingement sign was minimally positive (Tr. 649). Dr. Shrock believed that Plaintiff's intact strength indicated that his rotator cuff was in excellent shape and that he had effectively reached maximum medical improvement (Tr. 649). Results of a March 2004 functional capacity evaluation (FCE) indicated that Plaintiff could perform sedentary exertional level work (Tr. 388-93). Plaintiff continued to work (Tr. 54).

In May 2005, Plaintiff was involved in a motor vehicle accident and complained of headache, neck pain, low back pain, and right knee pain (Tr. 604-12, 650). A June 2005 MRI of the lumbar spine revealed a broad based posterior bulge of the intervertebral disc with bilateral neuroforaminal narrowing (Tr. 658). An MRI of the right knee revealed an oblique tear of the posterior horn of the lateral meniscus extending to the superior articular surface and joint effusion extending from the medial and lateral compartments to the suprapatellar region (Tr. 657). Dr. Shrock treated Plaintiff conservatively secondary to a diagnosis of right knee lateral meniscus, discoid meniscus with possible tear (Tr. 656).

Plaintiff continued to complain of left shoulder pain, but he had good strength on physical examination (Tr. 650). On August 10, 2005, Dr. Shrock released Plaintiff to light duty work with mopping and sweeping limited to thirty minutes per hour (Tr. 651). Dr. Shrock also limited Plaintiff to lifting and carrying to ten pounds with his left arm per restrictions and per the March 2004 FCE (Tr. 651).

None of Plaintiff's treating or examining physicians reported functional limitations due to medication side effects (Tr. 128-804).

4

## Medical Evidence After August 11, 2005, Plaintiff's Alleged Onset Date of Disability

Plaintiff alleges that he became disabled on August 11, 2005, due to left shoulder, neck, left arm, low back, and headache impairments (Tr. 63[-64]). However, in January 2006, Plaintiff asked Dr. Lehmann to take him off of light duty status so that he could obtain work (Tr. 377).

Dr. Lehmann administered transforaminal injections at C5-6 and C6-7 in November 2005, December 2005, and January 2006 (Tr. 380-85). A January 2006 study of Plaintiff's shoulder was normal (Tr. 362). Dr. Lehman again administered injections to Plaintiff's shoulder in May 2006 and in June of 2006 due to Plaintiff's continuing complaints (Tr. 550-51). In September 2006, Dr. Lehmann referred Plaintiff back to Dr. Shrock stating that he had nothing more to offer Plaintiff except for medication management (Tr. 371). Dr. Lehmann continued to treat Plaintiff with injections and also prescribed a Duragesic patch (Tr. 529-42, 597-603).

In 2006, Plaintiff reported headaches, but CT scans of the brain were negative (Tr. 332-33, 541). Plaintiff was prescribed pain medication for headache and neck pain (Tr. 534). Plaintiff also reported chronic bilateral knee pain, but x-rays of the bilateral knees revealed only mild early osteoarthritis (Tr. 355, 359). An x-ray of the lumbar spine revealed mild generalized lumbar spondylosis (Tr. 356). Plaintiff received treatment for diabetes and hypertension from his primary care physicians (Tr. 114, 123-25, 171). In July 2007, Plaintiff's hypertension was described as "borderline" (Tr. [114]). His physician increased his anti-hypertensive medication (Tr. 114). Treatment notes do not indicate any evidence of end organ disease due to diabetes or hypertension (Tr. 114, 123-25, []).

None of Plaintiff's treating or examining physicians reported functional limitations due to medication side effects (Tr. 128-804).

### Opinion Evidence

In August 2005, Dr. Shrock noted that Functional Tests administered in January 2005 indicated that Plaintiff had the ability to push 53.8 pounds, pull 53 pounds, and mop for thirty minutes per hour (Tr. 415).

In January 2006, Dr. Lehman opined that Plaintiff could perform light or preferably sedentary duty work (Tr. 374). Dr. Shrock indicated that Plaintiff attained maximum medical improvement on March 4, 2005, with two percent permanent impairment to the body as a whole (Tr. 659). Dr. Shrock indicated that Plaintiff's work restrictions included occasional lifting and carrying of up to ten pounds and frequent bending (Tr. 660).

In April 2006, Samuel Rand, M.D., performed a consultative examination of Plaintiff (Tr. 615-20). The examination was normal, except for decreased left shoulder forward elevation and abduction (Tr. 616, 620). Plaintiff was neurologically intact, and his grip and manual dexterity were normal (Tr. 616). Range of motion of all joints including his neck and back were normal (Tr. 616). He had no muscle atrophy and neurological examination was normal (Tr. 616). Dr. Rand's impression was degenerative disc disease status post left shoulder surgery, hypertension, and diabetes mellitus (Tr. 617).

After reviewing the evidence of record, state agency medical consultants opined that Plaintiff could perform a limited range of medium work (Tr. 521-28, 584-91).

## Administrative Hearing

At the administrative hearing held on August 1, 2007, the ALJ elicited vocational expert (VE) testimony (Tr. 824-3[2]). The ALJ asked the VE to assume a hypothetical person of Plaintiff's same age, education, and work history, with the residual functional capacity for medium work, except for occasional climbing of ladders, ropes, scaffolds, frequent climbing of ramps and stairs, stooping, kneeling, crouching, and crawling, and frequent reaching (including overhead) with the left upper extremity (Tr. 826-29). The VE testified that the hypothetical person could perform the jobs of fruit distributor, ironer, and counter clerk (Tr. 829-30).

Defendant's Supplement 3-7 (DE 18).

## IV.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the court's role is a limited one. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." Richardson v. Perales, 402 U.S. 389 (1971); Bloodsworth, 703 F.2d at 1239.  "Substantial evidence" is evidence that a reasonable person would accept as adequate to support the challenged conclusion.  Richardson, 402 U.S. at 401; Walden v. Schweiker, 627 F.2d 835, 839 (11th Cir. 1982).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## V.   ANALYSIS

### A.   The Sequential Evaluation

A "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months.

42 U.S.C. § 423(d)(1)(A). In determining the merits of a claim for benefits, the court must consider the evidence as a whole, including: 1) objective medical facts or clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age, education, and work history.  Walden, 672 F.2d at 839.

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If a severe impairment is not found, the ALJ will conclude that there is no disability; if a severe impairment is determined, the ALJ will proceed to the next phase of the analysis.  Id.

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience.  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define "residual functional capacity" as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). This determination takes into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others.  Id.  The ALJ must then compare the residual functional capacity to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(e).

8

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981).  If the Commissioner points to possible alternative employment, the burden returns to the claimant to prove an inability to perform those jobs. Id.  These shifting burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy.  20 C.F.R. § 404.1520(f).

To help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, Subpt. P, App. 2.  The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe medically determinable impairment from doing past relevant work. 20 C.F.R. § 404.1569.  The Guidelines are composed of detailed grids and rules which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. § 404.1569.  The Guidelines, therefore, are not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis."  Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991).  Further, they may not be used when the

9

claimant suffers from non-exertional limitations, such as mental impairments. Hargis, 945 F.2d at 1490; Walker, 826 F.2d at 1003. When the Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of residual functional capacity. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry his burden through the use of a vocational expert. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Wingo v. Bowen, 852 F.2d 827, 831 n. 4 (5th Cir. 1988); Walker, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Bowen, 889 F.2d at 50.

B.     Application of the Sequential Evaluation by the ALJ

After considering all of the evidence before him, he ALJ concluded that Claimant is "not disabled." The ALJ reached this determination after finding that even though Claimant is unable to return to his past work as a groundskeeper, he nonetheless is able perform "other work that exists in significant numbers in the national economy." Tr. 20-21.

In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.[4] He first observed that Claimant had not engaged in substantial gainful activity since August 11, 2005, his alleged onset date. Tr. 12. The ALJ next found that Claimant has the following "severe" impairments: "status post left shoulder surgery times two, chronic left shoulder pain, cervical degenerative disc disease with herniation, hypertension, and diabetes." Tr. 12. The ALJ then found Claimant does not have an impairment or

---

[4] Preliminarily, the ALJ noted that Claimant had acquired sufficient quarters of coverage to remain insured through December 31, 2010. Tr. 10, 12. Accordingly, Claimant was required to establish disability on or before that date to be entitled to a period of disability and disability insurance benefits. Tr. 10.

combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 12.

The ALJ next assessed Claimant's residual functional capacity ("RFC"). As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints. After reviewing the evidence and the testimony, the ALJ discounted Claimant's complaints. Tr. 15. More specifically, he found that "[C]laimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 15. The ALJ explained that he did not find Claimant's pain testimony credible "given the objective findings." Tr. 19. Then, after considering the record before him, the ALJ found that Claimant has the RFC to perform "medium work"[5] with the

_____

[5] Social Security Ruling 83-10 defines "medium work":

> Medium Work. The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which requires precision use of the fingers as well as use of the hands and arms.

> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are

following exceptions: "occasional climbing of ladders, ropes, or scaffolds, frequent climbing o[f] ramps and stairs, stooping, kneeling, crouching, and crawling, and frequent reaching (including overhead) with the left upper extremity." Tr. 14.     Having found that Claimant is capable of performing medium work, the ALJ next considered whether he has the ability to perform his "past relevant work as a groundskeeper," which the Dictionary of Occupational Titles classifies as semiskilled medium work. Tr. 20 (citing DOT #406.684-014, SVP 3). "Giving credence to the [C]laimant's [in]ability to perform frequent reaching with the left upper extremity, the [ALJ found] that he is unable to perform his past relevant work." Tr. 20.

Given that Claimant could not return to his past relevant work, the ALJ proceeded to examine whether other jobs exist to which Claimant is capable of making a vocational adjustment. Tr. 20-21. The ALJ noted that on the alleged disability onset date, the Claimant was 50 years old (defined as a "an individual closely approaching advanced age"), that he has a "marginal education," that he is able to communicate in English, and that he does not possess transferable skills. Tr. 20. The ALJ noted that were Claimant capable of performing "the full range of medium work," Rule 203.19 of the Guidelines

> relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g. taxi driver, bus driver, and tank-truck driver (semiskilled jobs).   In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting and carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

1983 WL 31251, at *6 (S.S.A.)

would direct a finding of "not disabled." Tr. 20. But the ALJ further noted that Claimant's ability to perform all or substantially all of the requirements of medium work has been impeded by additional limitations. Accordingly, he turned to a vocational expert ("VE") to assist him in determining "the extent to which [Claimant's] limitations erode the unskilled occupational base." Tr. 20. According to the VE, given Claimant's age, education, work experience, and RFC (for a reduced range of medium work), Claimant "would be able to perform the requirements of representative occupations such as fruit distributor, ironer, or counter clerk, all of which are unskilled light jobs" that exist in significant numbers in the national economy. Tr. 20 (citations omitted). The ALJ noted that Claimant's ability to perform "a limited range of medium work allows him to perform jobs at a lesser exertional level, including those [light jobs identified by the VE]." Tr. 21. The ALJ further noted that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). Then, based on the VE's testimony, and considering Claimant's age, education, work experience, and RFC, the ALJ found that Claimant is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and he concluded that Claimant not under a disability, as defined in the Social Security Act. Tr. 21.

C.    Discussion

Claimant disputes the findings and conclusions of the ALJ. Claimant argues that the ALJ erred in two (related) respects: 1) he failed to evaluate the side effects of Claimant's medications and their impact on his RFC; and 2) he acted as both judge and physician by finding that Claimant can forego taking his medications when necessary, a finding upon which he predicated his hypothetical questions to the vocational expert. For

13

the reasons set forth below, Claimant's arguments are not persuasive.

1.    Side Effects of Claimant's Medications

Claimant first argues that "[t]he ALJ failed to evaluate the side effects from [Claimant's] medications and its effect on [his] residual functional capacity." Plaintiff's Motion at 5 (DE 13). This argument is not supported by the record.

The ALJ's assessment of a claimant's subjective complaints – be they of medication side effects or of pain – is governed by 42 U.S.C. § 423(d)(5)(A), which states in part:

> An individual's statement as to pain or other symptoms shall
> not alone be conclusive evidence of disability as defined in this
> section; there must be medical signs and findings, established
> by medically acceptable clinical or laboratory diagnostic
> techniques, which show the existence of a medical impairment
> . . . which could reasonably be expected to produce the pain
> or other symptoms alleged and which, when considered with
> all evidence . . . would lead to a conclusion that the individual
> is under a disability.

The Eleventh Circuit has stated that an individual alleging disabling pain must show not only evidence of an underlying medical condition, but also either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1985)). "This standard also applies to complaints of subjective conditions other than pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Only once this standard is met must the ALJ then consider a claimant's subjective complaints. Foote v. Chater, 67 F.3d 1553, 1560-61 (11th Cir. 1995). The ALJ, however, is not required to credit those complaints; he may discount them provided he "articulates adequate reasons for doing so." Id. at 1561-

14

62.

Contrary to Claimant's contention, the ALJ did consider all the relevant evidence in assessing Claimant's RFC, including his complaints concerning pain and the side effects of his medications. See 20 C.F.R. § 404.1529. More specifically, the hearing transcript shows that the ALJ elicited, and the hearing decision shows that the ALJ considered, testimony from Claimant that he cannot sleep, that he has heartburn as a side effect of his medication, that he wears a pain patch and stimulator, and that his medications, including a morphine patch, make him dizzy, although he is able to forego taking his medications when necessary. Tr. 15, 19, 822, 823. Furthermore, the ALJ specifically incorporated these alleged side effects into a hypothetical question he posed to the VE. The ALJ asked if Claimant would be able to perform the jobs that the VE had identified – ironer, fruit distributor, and counter clerk – were he (the ALJ) to "accord credence and weight to the subjective complaints of the side effects that [Claimant] has mentioned"; the VE replied that "if [Claimant] suffered the side effects to which he's testified, he would not be able to perform those jobs." Tr. 831-32. The ALJ, therefore, did not overlook Claimant's reported side effects from the medications.

The ALJ, however, decided not to credit those subjective complaints, a decision that finds substantial support in the record. Significantly, Claimant here was unable to identify any treatment report that documented functional limitations due to the side effects of his medication. Plaintiff's Motion at 5-12 (DE 13). Instead, Claimant cited only to medication forms completed for the Agency and to a prescription.[6] Tr. 319-20, 565, 596. The ALJ,

_____

[6] Claimant also cites to Tr. 431, which does not reference medication or medication side effects. Plaintiff's Motion at 7 (DE 13).

therefore, did not have before him any report by a physician of record stating that Claimant has significant functional limitations arising from his medication side effects. Tr. 128-804; see Morse v. Astrue, No. 5:08-CV-291, 2010 WL 1257713, at *6 (M.D. Ga. March 29, 2010) (holding that while Plaintiff did indicate on his disability report forms completed for his disability application that his medication made his stomach hurt, made him sweat more and generally feel funny, he did not cite to medical records showing limiting effects of the medication) (citing Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (ALJ did not err in treatment of side effects when he noted the record did not disclose any concern of side effects by the several doctors)); Burns v. Barnhart, 312 F.3d 113, 130-31 (3d Cir. 2002) (upholding ALJ's finding that lack of complaints to treating physician about side effect of drowsiness defeated plaintiff's allegation of side effects; stressing that side effect of drowsiness is often associated with taking of medication but should not be viewed as disabling without record documentation of serious functional limitations.).

Beyond the medication side effects, the ALJ considered, but rejected, Claimant's allegations concerning "the extent of his debilitating pain." Tr. 19. In arriving at his finding, the ALJ engaged in a thorough analysis of the record, which concluded with this summary:

> The medical evidence establishes that the claimant has a history of a left shoulder injury that required the performance of two arthroscopic procedures. The claimant returned to work after his initial procedure in 1998 but suffered an exacerbation of pain. He began treating with Dr. Shrock on an orthopedic basis and with Dr. Lehman for pain management. Dr. Shrock performed a shoulder decompression with lysis of adhesions in September 2004 and prescribed aggressive range of motion therapy. The claimant improved following surgery, and while he still had left shoulder pain at his final workers comp evaluation in March 2005, he stated that he was able to use his shoulder for activities of daily living, although overhead activities bothered him.   At that time, the claimant had

excellent range of motion and symmetric rotator cuff strength, albeit with some wincing with minimally positive impingement sign.   Dr. Shrock felt that the claimant's intact strength indicated that the rotator cuff was in excellent shape.   The claimant continued to report pain, however, his strength remained good, and Dr. Shrock allowed the claimant to perform light duty work with limited mopping and sweeping. According to Dr. Shrock, the claimant reached maximum medical improvement with regard to his left shoulder and was to be maintained with conservative treatment. The [ALJ noted] that Dr. Shrock consistently allowed the claimant to return to work with restrictions relating to his left upper extremity.   In addition, an x-ray of the claimant's left shoulder taken in January 2006 was unremarkable with no evidence of arthritis or tendonitis (Ex. F/432).  The claimant was also diagnosed with cervical disc herniation that was treated conservatively with several injections, and it appears that the claimant's neck pain is primarily associated with his shoulder pain and is not being managed separately.  There is no indication that the claimant requires cervical disc surgery.  He was found to have lumbar degenerative disc disease that was managed conservatively, although he did report chronic low back pain. There are no substantial abnormal findings relating to the claimant's back pain that impact his ability to sit, stand, walk, or lift.  Although the claimant reported chronic bilateral knee pain to his primary care physician in 2006 and 2007, x-rays of the bilateral knees conducted in March 2006 revealed only mild early osteoarthritis.  The claimant was also treated for a possible meniscus tear by Dr. Shrock in 2005 with good response to injection therapy and no mention of the need for additional treatment.  The claimant is followed for diabetes, hypertension, and high cholesterol, which appear to be adequately maintained with medication and do not impose significant limitations on his ability to function.  The claimant also reported headaches that were the consequence of his 2005 motor vehicle accident, however, CT scan of the brain was negative.

T. 18-19.

After reviewing all the evidence and all the testimony – including the testimony concerning the side effects of his medications – the ALJ properly elected to discount Claimant's subjective complaints, deciding that they were "not credible given the objective

findings." Tr. 19. The ALJ, therefore, adequately articulated the grounds upon which he relied in discounting Claimant's subjective complaints, and his credibility assessment is supported by substantial evidence. Because the ALJ clearly articulated a credibility finding with substantial supporting evidence, this Court may not disturb such a finding. See Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

### 2.   Hypothetical Question Posed to Vocational Expert

Claimant's second argument is related to his first: the ALJ improperly acted as both judge and physician by finding that Claimant can forego taking his medications when necessary, a finding upon which the ALJ predicated his hypothetical question to the VE. Plaintiff's Motion at 7-8 (DE 13). According to Claimant, the ALJ was "playing doctor" by stating "that [Claimant] should stop taking his medications so that he can engage in work." Plaintiff's Motion at 8-9 (DE 13). Claimant further argues that had the ALJ properly considered his (Claimant's) testimony concerning the medications' side effects, then, as the VE testified, there would be no work that he could perform. Plaintiff's Motion at 7-11 (DE 13). The undersigned, again, is not persuaded.

First, Claimant's allegation against the ALJ – "the ALJ in the decision makes it very clear that [Claimant] should stop taking his medications so he can work" – is not a fair reading of the ALJ's decision. Plaintiff's Motion at 8 (DE 13). Rather, after engaging in an exhaustive review of the medical record, and "given the objective findings" therein, the ALJ discounted Claimant's subjective complaints, adding that Claimant himself chooses to forego his medications when he deems it necessary. Tr. 19 ("The Administrative Law Judge therefore finds that the claimant's testimony regarding the extent of his debilitating pain is not credible given the objective findings. While the claimant testified that his

18

medications, including a morphine patch, make him dizzy, he did not take his medication prior to driving to the hearing, which indicates that he is able to forego taking his medications when necessary."). Indeed, Claimant acknowledged not only that he discontinued his medication when he drove to the hearing, but that on the advice of his own physicians he discontinues his medications each time he drives, which he stated was four times each week. Tr. 824, 831.

Second, the record shows that the ALJ posed two hypotheticals to the VE. The first hypothetical was based upon the facts found by the ALJ: a claimant approaching advanced age, with a 4th grade education, no transferable skills, and an RFC for a reduced range of medium work.[7] Tr. 826-28. The VE testified in response that such a hypothetical person could perform the jobs of fruit distributor, ironer, and counter clerk. Tr. 829-30. The ALJ did not err in presenting this hypothetical, and in accepting this response, as he had substantial evidence for the facts contained therein. The ALJ then followed with a hypothetical question containing the limitations Claimant alleges as to the medications' side effects. Tr. 831-32 ("[I]n the event that [I] accord credence and weight to the subjective complaints of the side effects that [Claimant] has mentioned . . . ."). The VE testified in response that such a hypothetical person would not be able to perform the three jobs that he had identified. Tr. 832. Notwithstanding this second response from the VE, the ALJ did not err in rejecting it and relying instead only upon the VE's response to the first

[7] More specifically, the ALJ asked the VE to assume a hypothetical person with the residual functional capacity for medium work, except for occasional climbing of ladders, ropes, scaffolds, frequent climbing of ramps and stairs, stooping, kneeling, crouching, and crawling, and frequent reaching (including overhead) with the left upper extremity. Tr. 826-29.

19

hypothetical. An ALJ is not obligated to accept any testimony that is based upon assumed limitations – medication side effects – for which the ALJ does not find sufficient support in the record; indeed, to do otherwise, would constitute error. Tr. 832. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004) (stating that an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported). Because the ALJ's first hypothetical question contained those limitations – and only those limitations – for which he had found substantial support in the record, the VE's responsive testimony that there exist jobs that Claimant can perform supports the ALJ's finding that Claimant is "not disabled."

VI.    RECOMMENDATION

The ALJ had substantial evidence upon which to discount Claimant's subjective complaints, including his complaints concerning pain and the side effects of his medications. Having an adequate basis to discount that testimony, the ALJ posed a hypothetical question to the VE that incorporated those limitations – and only those limitations – for which he had found substantial evidence in the record. The VE testified in response to that hypothetical that there exist other jobs that Claimant is able to perform. And having accepted the VE's testimony, the ALJ had substantial evidence to support his finding that Claimant is "not disabled." Accordingly, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 13) be DENIED. The undersigned further RECOMMENDS that Defendant's Motion for Summary Judgment (DE 16) and Defendant's Supplement to Defendant's Motion for Summary Judgement (DE 18) be GRANTED and that the decision of the Commissioner be AFFIRMED.

The parties will have fourteen (14) days from the date of being served with a copy

of this Report and Recommendation within which to file written objections, if any, with the
Honorable James I. Cohn, United States District Judge. Failure to file objections timely
shall bar the parties from a de novo determination by the district judge of an issue covered
in the report and shall bar the parties from attacking on appeal factual findings accepted
or adopted by the district court except upon grounds of plain error or manifest injustice.
See 28 U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982)
(en banc).

   DONE AND SUBMITTED at Fort Lauderdale, Florida, this 7th day of February 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

The Honorable James I. Cohn
United States District Court Judge

All counsel of record